```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA

WILLIAM EDWARD NEWSOM,            )
                                  )
            Plaintiff,            )
                                  )
                                  ) Case No. CIV-19-201-JFH-KEW
                                  )
COMMISSIONER OF THE SOCIAL        )
SECURITY ADMINISTRATION,          )
                                  )
            Defendant.            )
```

## REPORT AND RECOMMENDATION

Plaintiff William Edward Newsom (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 59 years old at the time of the decision. He has a GED and past work as a material handler. Claimant alleges an inability to work beginning on November 18, 2014, due to limitations resulting from fibromyalgia, discitis, carpal tunnel syndrome in both hands, arthritis in the feet, knees, hands, and back, gout in the feet and knees, high blood pressure, kidney stones, and an enlarged prostate.

### Procedural History

On June 13, 2016, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's

application was denied initially and upon reconsideration. On July 16, 2018, ALJ Michael Mannes conducted an administrative hearing in McAlester, Oklahoma, at which Claimant appeared and testified. On August 10, 2018, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on April 24, 2019, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform medium work with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error because: (1) he failed to discuss uncontroverted and/or significant probative evidence that conflicted with his findings, and (2) he failed to properly evaluate the opinion of his treating physician, Michael Irvin, D.O.

## Discussion of Probative Evidence

In the decision, the ALJ found Claimant suffered from severe impairments of fibromyalgia, degenerative joint disease, and carpal tunnel syndrome. (Tr. 102). He determined Claimant could

4

perform medium work with additional limitations. Claimant could only occasionally climb stairs or ramps, stoop, kneel, crouch, or crawl. Claimant could never climb ladders, ropes, or scaffolds. He could frequently balance, reach, handle, and finger. (Tr. 103).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of trimmer, laundry worker, and hospital food service worker, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 109). As a result, the ALJ concluded Claimant was not under a disability from November 18, 2014, through the date of the decision. (Tr. 110).

Claimant contends the ALJ failed to discuss probative portions of the evidence which contradicted his findings. "[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citation omitted). He may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984). The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record

were considered and resolved." *See* Soc. Sec. Rul. 96-8p, 1996 WL 374184, *7 (July 2, 1996).

Although the Commisioner is correct that much of the evidence cited by Claimant consists of test results and findings which do not necessarily contradict Claimant's RFC, there are certain portions of the evidence that are probative to the RFC determination that were not discussed by the ALJ in the decision. For example, the ALJ assigned "great weight" to the opinion of orthopedic surgeon Steven Milos, M.D. On August 6, 2015, Dr. Milos reviewed the medical evidence, including a Functional Capacity Evaluation ("FCE") performed on March 10, 2015, regarding Claimant's short-term disability claim through his employer. Dr. Milos referenced the FCE and noted it "found that the [C]laimant could safely perform his job duties from an objective standpoint." The ALJ stated that "Dr. Milos opined that there was no clinical evidence f[rom] an orthopedic perspective to support a disabling diagnosis and that the [C]laimant's main issue was generalized pain." He gave "great weight to [the] opinion because it was rendered within Dr. Milos' specialty and because it [was] consistent with the medical evidence as a whole." (Tr. 107, 686-92).

However, although the FCE noted Claimant's work as a material handler met the demands of a "[m]edium demand vocation, per the Dictionary of Occupational Titles[,]" and he could perform the

6

work, the ALJ made no mention that the FCE also included more specific findings that Claimant was able to safely perform the job activities of sitting continuously, standing/walking rarely, lifting/carrying up to 44 pounds occasionally, climbing ladders rarely, and hand twisting, grasping and pushing buttons rarely. Claimant was not able to safely preform the activity of pulling hand over hand continuously. It was further noted there was no reason to believe Claimant "would abuse the discretionary authority to self-monitor and self-regulate" accommodations, including the opportunity to sit, stand, or otherwise change body position to maintain a reasonable level of comfort during his work shift, break workloads down into manageable increments, and monitor repetitive or sustained gripping. (Tr. 420-25).

The ALJ also failed to discuss Claimant's examination on October 4, 2017, with neurologist Sunil Thummala, M.D. Claimant was referred to Dr. Thummala by Dr. Irvin. Dr. Thummala examined Claimant and assessed him with polyneuropathy, amnesia, hyperreflexia, and chronic pain. Regarding his polyneuropathy, Dr. Thummala found Claimant's hyperreflexia with positive Romberg's test and reduced vibration sense was consistent with progressive polyneuropathy. (Tr. 1472-75).

The ALJ further failed to discuss probative findings from Dr. Irvin. Although the ALJ noted on several occasions that Dr. Irvin found Claimant's "gait was slowed" and he discussed several

treatment notes from Claimant's visits with Dr. Irvin (Tr. 105, 106, 107), the ALJ failed to mention certain functional limitations from Dr. Irvin's treatment notes. When discussing Claimant's edema in his lower extremities, the ALJ ignored Dr. Irvin's directive given on several occasions between October of 2016 and May of 2018, limiting Claimant from excessive use of his swollen extremity and/or the recommendation that Claimant elevate his leg/foot as much as possible. (Tr. 105-07, 1336-37, 1341-42, 1344-45, 1437-38, 1440-41, 1446-47, 1449-50).

In light of this evidence, on remand, the ALJ should reassess the RFC after discussing all the probative evidence in the record with regard to Claimant's impairments and limitations, reconsider his subjective complaints in light of the evidence, and determine the effect, if any, on his ability to engage in work activities.

### Consideration of Opinion Evidence

Claimant also argues the ALJ failed to properly evaluate the opinion of his treating physician, Dr. Irvin. He asserts that the ALJ gave Dr. Irvin's assessment "partial weight," but in doing so, the ALJ failed to properly provide specific and legitimate reasons for discounting Dr. Irvin's opinions.

The ALJ discussed several of Dr. Irvin's treatment notes in the decision. (Tr. 105-07). He further summarized in detail the functional limitations assessed by Dr. Irvin in June of 2018. Dr. Irvin determined Claimant would miss three or more days of work

8

per month and that his pain had more than a minimal effect on his ability to do work activities. His pain would cause inadequate functioning in tasks, reduced his basic mental work activities to a degree that required rest and/or medication, and side effects from his medication could be expected to be severe and limit his effectiveness due to distraction, inattention, and drowsiness. (Tr. 107, 1482-83). Dr. Irvin also found Claimant could understand, remember, and carry out simple instructions, make simple work-related decisions, and respond appropriately to supervision in a routine work setting. His impairments and symptoms could result in his needing to take unscheduled breaks during an eight-hour workday. (Tr. 107-08, 1484). Dr. Irvin further determined Claimant's condition required elevation of his legs, he could walk half a city block, he could sit for fifteen minutes or stand for ten minutes at one time before changing position, he could sit, stand, or walk less than two hours in a workday, and he needed a position that permitted him to shift positions at will from sitting, standing, or walking. Claimant could occasionally carry up to ten pounds, could rarely look up, look down, turn his head to the left or right, or hold his head in a static position. He could rarely twist or stoop, could never crouch, climb ladders, or climb stairs. Claimant was limited to 80 percent grasping and fingering bilaterally and limited to 25% reaching in all directions and overhead bilaterally. (Tr. 108, 1485-1490).

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). He must provide specific, legitimate reasons for rejecting any such opinion, and also must give consideration to several factors in weighing a medical opinion. *Id*. Moreover, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). "As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]'" *Mounts v. Astrue*, 479 F. App'x 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ specifically recounted in the decision the limitations found by Dr. Irvin. He assigned "partial weight" to Dr. Irvin's opinions "because Dr. Irvin [was] a treating source." He then seemingly rejected all of Dr. Irvin's limitations because they were "inconsistent with his own treatment records and with the evaluations of Caetaono Coimbra, M.D., and Mark Silver, M.D." The ALJ also rejected Dr. Irvin's opinions finding they were inconsistent with Claimant's own testimony. (Tr. 108).

However, by assigning "partial" weight to Dr. Irvin's opinions, the ALJ's analysis is not specific enough for the Court to determine which portions of Dr. Irvin's opinions, if any, were given some weight and which portions were given no weight at all. This Court cannot make such a determination for the ALJ. *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").

Moreover, although the ALJ noted Dr. Irvin's limitations were inconsistent with his treatment notes and the evaluations of Dr. Coimbra and Dr. Silver, the ALJ failed to identify the inconsistencies with Dr. Irvin's treatment records and, as previously discussed herein, he failed to account for probative evidence which could support some of the limitations found by Dr. Irvin and could affect the weight assigned to the evaluations of Dr. Coimbra and Dr. Silver. *See Langley*, 373 F.3d at 1123 ("Because the ALJ failed to explain or identify the claimed inconsistencies . . ., his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

Further, although some of Claimant's testimony is inconsistent with certain of the limitations assessed by Dr. Irvin,

11

on remand, the ALJ should reconsider Claimant's testimony in light of his consideration of the additional probative evidence. He also should re-evaluate Dr. Irvin's opinions and specifically set forth those portions that are given weight, the portions that are not supported, and specifically discuss the inconsistencies between Dr. Irvin's limitations and his treatment records. Because the ALJ's consideration of the additional probative evidence and the re-evaluation of Dr. Irvin's opinions may result in further limitations in the RFC, the ALJ should reassess his findings at steps four and five of the sequential process if necessary.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of the Social Security Administration should be REVERSED and the case REMANDED for further proceedings.  The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 2nd day of September, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

13